NEW YORK DOCK COMPANY, PLAINTIFF, v. WALTER C. SCHULTZ ET AL., DEFENDANTS.

Argued December 10, 1923—Decided April 24, 1924.

1. Defendants chartered a scow to carry bricks from Jersey City to Brooklyn, and the bricks were so negligently loaded by defendants' servants that, after reaching their destination, and while tied to plaintiff's wharf, the scow overturned and deposited

*99 N. J. L.*          New York Dock Co. v. Schultz.

the bricks at the bottom of the river in front of the wharf. *Held,* that defendants were responsible for the negligent conduct of their agents, and that having failed to remove the bricks when requested to do so, were liable to plaintiff for maintaining a nuisance. *Held, further,* that the admiralty rule of abandonment of a vessel at sea had no application under the facts proven, as the vessel had reached its destination and was moored to the wharf when it overturned.

2. One cannot terminate his relationship and responsibility as owner of a chattel by casting it upon his neighbor's property, and thereby seek to relieve himself of responsibility upon the theory of abandonment.

On rule to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices MINTURN and BLACK.

For the rule, *Louis Ogust.*

*Contra, Autenrieth & Gannon.*

The opinion of the court was delivered by

MINTURN, J.    Proverbally the "Shamrock" has been loaded and drowned upon many felicitous occasions, but it remained for this occasion to present the opportunity, due to a load of bricks, for her actual loss of balance and her precipitation of the cargo to the bottom of the rushing waters of the East river, thus causing the debacle, which resulted in this suit.

The "Shamrock" was a scow owned by a towing company, but unlike her namesake, she was loaded and leaked to such an extent, that occasionally she had to be pumped to preserve her equilibrium.    The defendants chartered her to carry the bricks from Jersey City to the commercial wharf in Brooklyn, owned by the plaintiff, and while she was moored to the wharf at night, she listed, overturned, and deposited her cargo in the bottom of the river in front of the wharf.

The specific claim which furnished the basis for the action, is that after the scow had been moored to the dock, the bricks were negligently loaded by defendants' servants upon one

side of the vessel, so that she listed and overturned during the night. It was in evidence that the vessel during the preceding day had been leaking, so that the water accumulated to a depth of eight or ten inches, which the captain was obliged to pump from her hold; that in the morning the craft was found overturned, the cargo was deposited in the river in front of the plaintiff's wharf, causing an obstruction to the use of plaintiff's property, which obliged it to incur the expense necessary for the removal of the nuisance.

It was also in evidence that the defendants were notified to remove the obstruction, but they insisted that as charterers of the vessel they were not responsible for the faulty unloading of the brick; that they had abandoned the "Shamrock" and her bricks to the waters in which they were so unceremoniously and unexpectedly consigned during the fateful night.

The suit was based upon two grounds—(1) negligent loading of the craft, and (2) the creation of a nuisance by which plaintiff was deprived of the use of its property, and was thereby obliged to clear the river at the dock of the obstruction to navigation. The jury found for the plaintiff, their verdict representing only the cost of removal of the obstruction, and interest thereon. This rule to show cause is based upon the contention that the verdict is against the weight of the evidence, and that a nonsuit or a direction for the defendant should have been granted. We think the evidence was plenary in support of the plaintiff's contention, that the bricks were so negligently removed, in view of the leaky condition of the vessel, that she listed during the night and overturned, thus depositing herself and her cargo as an obstruction in the river and thereby obstructing the plaintiff in the lawful use of its property; that the obstruction thus created was there maintained after repeated notice to defendants to remove it. The defendants as charterers and possessors of the vessel had control of her and her captain and cargo, and were therefore primarily responsible for the use, management and control of the vessel. *Cheetham* v. *Hampson*, 4 *T. R.* 318; 3 *Bl. Com.* 222.

That the defendants were liable under the general rule of law for the negligent conduct of their agents, in unloading the craft, needs no citation of authority to support it. Upon the general principle of maintaining the nuisance after repeated admonitions to remove it, the legal theory of defendants' liability was in effect duplicated. Nor can this legal obligation be avoided upon the maritime theory of abandonment of the vessel and its freight. In this instance the "Shamrock" was not at sea so as to be subject to that maritime rule, but was securely moored to the wharf, at her point of destination, and her freight was just as securely deposited on the bottom of the river at its point of destination. The admiralty rule applicable to' abandonment of a vessel at sea is intended to relieve the shipper and the owner, and cast the burden of loss and damage upon the insurer; but its application ceases when the point of destination has been reached, and the vessel becomes attached to the wharf. 3 *Kent Com.* 308; *Shawe* v. *Felton,* 2 *East* 109; 1 *C. J.* 5, and cases.

If an abandonment upon land be urged, one cannot so terminate his relationship and responsibility of ownership in a chattel as to cast it upon his neighbor's property, and thus *ipso facto* create a nuisance, and thereby seek to relieve himself of incidental responsibility by this gratuitous act, upon the theory of abandonment. Blackstone defines this species of tort-feasance as "anything done to the hurt or annoyance of the lands, tenements and hereditaments of another." 3 *Bl. Com.* 216.

The fundamental conception of the action resulting from this species of tort-feasance, at common law, was based upon the maxim *sic utere tuo ut alieniun non lædas*. *Ross* v. *Butler,* 19 *N. J. Eq.* 294; *State* v. *Trenton,* 97 *N. J. L.* 246.

Thus the owner or master of a ship might maintain an action on the case for a nuisance created by an occupant on a wharf, by reason of which a ship attached to the wharf was made uninhabitable to its occupants. *Poll. Tort* 385.

Inversely the rule has equal application to a situation such as that presented in the case at bar.

We have examined the procedural errors complained of, and find none of sufficient substance to require extended discussion.

The rule to show cause will be discharged.